

David L. Bissett
United States Bankruptcy Judge
**Dated: May 20th, 2024**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| *In re:* | ) | |
| | ) | |
| WWMV, LLC, | ) | CASE NO. 2:23-bk-20180 |
| | ) | |
| Debtor. | ) | Chapter 7 |

### <u>MEMORANDUM OPINION</u>

Pending before the court is an application to employ special counsel under 11 U.S.C. § 327(e). Specifically, Robert L. Johns ("Trustee") seeks to employ Shawn P. George and George Law Group, PLLC ("George"), to represent WWMV, LLC ("Debtor"), in ongoing litigation in district court. Creditors Broun Properties, LLC, and Ohio River Holdings, LLC ("Broun"), and Blackhawk Land Resources, LLC, and Panther Creek Mining, LLC ("Blackhawk"), object and argue that George has a disqualifying conflict of interest.

For the reasons stated herein, the court will grant the Trustee's application.

### I. BACKGROUND

On October 24, 2023, three of the Debtor's creditors filed an involuntary Chapter 7 petition against the Debtor. The Debtor consented to the bankruptcy petition through its response, and the court entered an order for relief on November 16, 2023. Notably, the Debtor's members are two limited liability companies. RWMV, LLC ("RWMV"), owns 51% and CMDC, LLC ("CMDC"), owns 49% of the Debtor, respectively. Shawn P. George has a 25% ownership interest in RWMV and a 33⅓% ownership interest in CMDC, although his stake in both entities is a non-voting interest. Additionally, Mr. George is a personal guarantor on certain liabilities of the Debtor, and he is a creditor of the Debtor, RWMV, and CMDC.

On November 28, 2023, the Trustee was appointed to administer the bankruptcy estate. Among the Debtor's assets is the civil action pending in the Southern District of West Virginia. On February 2, 2024, the Trustee filed an application to employ George as special counsel. George's anticipated role is to investigate and litigate issues relating to Civil Action No. 2:16-cv-

10711 pending in the United States District Court for the Southern District of West Virginia styled *Blackhawk Land and Resources, LLC, and Panther Creek Mining, LLC, v. WWMV, LLC, and RWMV, LLC* ("Civil Action").

On February 12, 2024, Broun filed a protective objection to the Trustee's application reserving the right to object later. On February 24, 2024, Blackhawk filed an objection to the Trustee's application. In addition to objecting on the merits, both Broun and Blackhawk requested that the court order George to turnover the Debtor's legal files to the Trustee.

On March 11, 2024, the court held a hearing on the matter. Although the Trustee inadvertently referenced § 327(a) of the Bankruptcy Code in his application to employ, he clarified at the hearing that he seeks relief under § 327(e) for the sole purpose of pursuing the Debtor's interests in the Civil Action. Based on the representations of the parties, the court provided a briefing schedule and ordered George to file a supplemental declaration addressing the concerns raised by Blackhawk. George filed a supplemental declaration on March 18, 2024, the Trustee filed a response on March 25, 2024, and Blackhawk filed a reply on April 1, 2024.[1]

## II. DISCUSSION

The Trustee contends that George's employment is necessary and in the best interest of the estate because George has represented the Debtor in the Civil Action since its inception in 2016 and provides a certain level of expertise. The continuity of representation will result in significant cost savings for the bankruptcy estate. The Trustee further believes that the employment application is appropriate under § 327(e) being for the limited purpose of pursuing the Civil Action and that George does not hold an interest adverse to the estate relating to the Civil Action.

Blackhawk contends that George's involvement with the Debtor, RWMV, and CMDC creates an interest adverse to the estate and an actual conflict of interest. Specifically, Blackhawk argues that George's financial interests are so intertwined that his representation would be materially limited, especially given that George represents both the Debtor and co-defendant RWMV in the Civil Action. Additionally, Blackhawk argues that this employment application should be reviewed under § 327(a) instead of § 327(e) because of the Civil Action's ramifications on the bankruptcy case.

---

[1] Broun deferred to Blackhawk during the March 11th hearing regarding its position on George's employment.

Section 327 of the Bankruptcy Code governs the trustee's employment of professionals. Section 327(a) allows for the employment of various professionals, including attorneys, "that do not hold or represent an interest adverse to the estate, and that are disinterested persons" to assist the trustee in conducting the case. 11 U.S.C. § 327(a). Section 327(e) specifically focuses on the employment of special counsel, allowing the trustee to employ an attorney for matters other than representing the trustee in conducting the case. 11 U.S.C. § 327(e). Special counsel may be employed under § 327(e) if: (1) the attorney has previously represented the debtor, (2) the employment is in the estate's best interest, (3) the employment is for a special purpose, and (4) the attorney does not have an adverse interest to the debtor or the estate. *Id.*

Examining those four elements here, the court finds that the Trustee's application to employ George is appropriate under § 327(e).[2] It is uncontested that George previously represented the Debtor, and Blackhawk did not object on the grounds that the employment is not in the best interest of the estate. Blackhawk focuses its objection on whether George has an interest adverse to the estate and this is where the court will focus its discussion and analysis.

## A. § 327 Analysis and Adverse Interest

Congress did not define adverse interest in the Bankruptcy Code. It generally exists when a professional is compromised by "(1) an economic interest tending to lessen the value of the estate, (2) any interest that would cause a dispute in which the estate is a rival claimant, or (3) a predisposition giving rise to a bias against the estate." *In re James F. Humphreys & Assocs., L.C.*, 547 B.R. 190, 194 (Bankr. S.D.W. Va. 2016). Although adverse interest language is included in both § 327(a) and (e), the differences between subsections provide guidance for interpretation.

For instance, § 327(a) includes a disinterestedness requirement not present in § 327(e), relaxing the conflict of interest standard. Additionally, the scope of employment under § 327(a) is broad, relating specifically to the trustee's duties in administering the case. In contrast, the scope of employment under § 327(e) is narrow and specific. These two distinguishing factors significantly lower the bar for § 327(e) employment applications.

Removing the disinterestedness requirement relaxes the standard for determining conflict. Section 327(e) requires counsel to have previously represented the debtor. This all but ensures

---

[2] Blackhawk argues that the application should be reviewed under § 327(a), but George's anticipated employment is only for the limited purpose of representing the Debtor in the Civil Action.

special counsel will not be disinterested.  Indeed, "[t]he purpose of section 327(e) is to 'allow counsel who cannot meet the disinterested requirement of § 327(a) to nevertheless render valuable services to the debtor in matters where counsel has no adverse interest.'"  *In re J.S. II, L.L.C.*, 371 B.R. 311, 318 (Bankr. N.D. Ill. 2007) (quoting *In re Tidewater Mem'l Hosp., Inc.*, 110 B.R. 221, 227 (Bankr. E.D. Va. 1989)).  "The key difference between employment under section 327(a) and employment under section 327(e) is that the conflict of interest standard in section 327(e) is more relaxed . . . ."  *In re J.S. II, L.L.C.*, 371 B.R. at 317.  Along with relaxing the conflict of interest standard, § 327(e) limits the scope of representation by which actual or potential conflicts are analyzed.

Limiting the scope of representation narrows the conflict analysis to a specific matter. Section 327(a) governs representation of the trustee generally in administering the estate, while § 327(e) governs representation for a "specified special purpose" and specifically excludes the type of employment contemplated by subsection (a).  11 U.S.C. § 327(e).  "An attorney employed under § 327(e) is truly more of a 'hired gun,' in the colloquial sense; special counsel is to do the job specified in the retention, i.e., the continuance of a pre-petition engagement to a conclusion on its merits under its governing substantive law."  *In re Polaroid Corp.*, 424 B.R. 446, 452 (Bankr. D. Minn. 2010).  Indeed, § 327(e) "narrows the conflict-of-interest issue to one of factual evaluation of actual or potential conflicts only as related to the particular matters for which representation is sought."  *In re Statewide Pools, Inc.*, 79 B.R. 312, 314 (Bankr. S.D. Ohio 1987).  Therefore, the court must examine the interests of the estate and those of special counsel only as they relate to the specific matter for which special counsel is to be employed.

Aligning interests between the estate and the prospective employee relating to the specific matter in question is one determination courts use to allow employment under § 327(e).  Section 327(e) recognizes the possibility of aligning interests and "provides for practical implementation of a trustee's frequent need to use the expertise and knowledge of a debtor's counsel, if such can be done without harm to the debtor's or the estate's interests."  *Id.*  Some courts approve employment under § 327(e) when the interests of special counsel and the estate are aligned.  *See In re Polaroid Corp.*, 424 B.R. 446 (Bankr. D. Minn. 2010); *In re J.S. II, L.L.C.*, 371 B.R. 311 (Bankr. N.D. Ill. 2007); *In re Midway Motor Sales, Inc.*, 355 B.R. 26 (Bankr. N.D. Ohio 2006); *In re RPC Corp.*, 114 B.R. 116 (M.D.N.C. 1990).  Even if not perfectly aligned, "interests are not

4

considered 'adverse' merely because it is possible to conceive a set of circumstances under which they might clash. *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994).

Adverse interests or conflicts must be more than speculative to justify disqualification under § 327(e). Courts have broad discretion when determining where to draw the line between actual conflict and potential conflict. Unsurprisingly, "courts have generally declined to formulate bright-line rules concerning the criteria for disqualification, favoring instead an approach which evaluates the facts and circumstances of each particular case." *In re Garza*, No. 93014622-AT, 1994 WL 282570, at *2 (Bankr. E.D. Va. Jan 19, 1994). One reoccurring notion is that potential means more than possible.

> The "adverse interest" referenced in section 327(e) refers to either an actual or a reasonably probable conflict of interest. However, conflicts based purely on conjecture or mere speculation do not necessarily warrant an attorney's disqualification as section 328(c) of the Code can be used as a safeguard to protect estates if potential conflicts ripen into actual adverse interests.

*In re J.S. II, L.L.C.*, 371 B.R. at 321; *In re Humphreys*, 547 B.R. at 195 (granting application under § 327(a) determining "no reasonable basis" to conclude applicant has an "interest materially adverse to the estate" and that objector's concerns are speculative at this point); *In re RPC Corp.*, 114 B.R. at 120 (slight possibility of corporate mismanagement, preference claims, or hypothetical potential settlement does not bar the retention of special counsel); *In re AroChem Corp.*, 181 B.R. 693, 700 (Bankr. D. Conn. 1995) ("the disqualifying adverse interest addressed in § 327(e) is either an *actual* or a *reasonably probable* conflict of interest").

Conflict analysis under state rules of professional conduct varies depending on which subsection of § 327 is applied. Although conflict analysis under § 327 should usually mirror that under state rules of professional conduct, state rules of professional conduct are not determinative and do not supplant § 327 when both the Bankruptcy Code and state rules are implicated. *In re Gregory*, No. 18-bk-50234, slip op. at 5 n.1 (Bankr. S.D.W. Va. Dec. 18, 2019). As a result, the § 327(e) considerations relaxing the standard and limiting the scope of conflict analysis similarly affect the analysis under state rules of professional conduct.

Rule 1.7 of the West Virginia Rules of Professional Conduct prevents representation when it (1) is "directly adverse" to another client, or (2) creates "significant risk" that the representation will be "materially limited." W. Va. R.P.C. 1.7(a). By its plain language, Rule 1.7 articulates a

5

need for more than just *any* risk and more than just *any* limitation on representation before warranting a violation. Even under an ethics analysis "disqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary." *In re Corwin Place, LLC*, 562 B.R. 663, 667 (Bankr. N.D.W. Va. 2016) (quoting *Univ. of W. Virginia Bd. of Trustees v. VanVoorhies*, 33 F.Supp.2d 519, 520 (N.D.W. Va. 1998)). This notion closely tracks that of § 327 and focuses on the effect of a potential conflict on representation.

**B. Additional Safeguards and Public Policy**

In addition to relaxing the standard of conflict analysis and narrowing the scope of representation, the Bankruptcy Code provides additional safeguards to protect the estate and the integrity of the court. "It bears noting that retention under section 327(e) is merely the first step if [special counsel] wishes to obtain compensation for services rendered." *In re J.S. II, L.L.C.*, 371 B.R. at 323 (referencing fee applications). Compensation is subject to a second look by the court before it may be approved. *In re D'Angelo*, No. BR 21-21903-JAD, 2022 WL 1010047, at *2 (Bankr. W.D. Pa. Apr. 4, 2022). This second look is facilitated by the fee application process.

Section 328 provides limitations on compensation of professionals. Specifically, § 328(c) allows the court to deny compensation for employment and reimbursement for expenses if the professional person "represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328. The courts use this safeguard to protect against both undisclosed conflicts and conflicts that arise after an employment application has been approved.

Special counsel has a continued duty to disclose even after employment has been approved by the court. Indeed, many courts caution that failure to disclose both timely and completely could result in denial of fees or termination of employment. *In re Statewide Pools*, 79 B.R. at 315 (approving employment "does not foreclose challenge" to continued employment); *In re J.S. II., L.L.C.*, 371 B.R. at 323 (special counsel will "risk total denial of any compensation" if an adverse interest develops during its representation and disclosures are not made timely); *In re D'Angelo*, 2022 WL 1010047, at *2 (approving employment "does not establish a right to be paid"); *In re AroChem Corp.*, 817 F.2d 175, 183 (1st Cir. 1987) (if the judge were to later perceive a materially adverse interest on the part of special counsel, some or all fees may be disallowed); *In re Midway*

6

*Motor Sales, Inc.*, 355 B.R. at 36 (the court may disqualify counsel or deny fees if an adverse interest or actual conflict arises in the future).

There are strong public policy considerations in allowing a party its counsel of choice. Indeed, "courts have long held that bankruptcy estates may select their professionals 'without interference from creditors.'" *In re D'Angelo*, 2022 WL 1010047, at *3; *In re Diamond Mortg. Corp. of Illinois*, 135 B.R. 78, 92 (Bankr. N.D. Ill. 1990) (recognizing the "inherent right of individuals or entities seeking legal services to employ the counsel of their choice"). The trustee is "generally given a wide berth in selecting a lawyer" and should be deprived of that right "only in the rarest of cases." *In re Humphreys*, 547 B.R. at 193.

## C. Analysis

Here, George's interests do not create an actual conflict of interest or an interest adverse to the estate within the meaning of § 327(e) when viewed through the narrow scope of representation in the Civil Action because those interests are currently aligned with the estate and any potential future conflict is too remote and speculative.

Mr. George has a minority ownership interest in both members of the Debtor, RWMV and CMDC. He is not able to vote or impact the corporate actions of either entity, let alone the Debtor. As represented by the Trustee and George, the Debtor's interests are perfectly aligned with RWMV in the Civil Action. Any personal interest George has in the outcome of the Civil Action would therefore also be perfectly aligned. There have been no crossclaims filed in the Civil Action and no indication as to any diverging interests between the Debtor and RWMV.

Blackhawk has alleged several adverse interests on the part of Mr. George, including collecting money for himself on his claims against the Debtor from the proceeds of the Civil Action. Not only does this fall outside the scope of his representation in the Civil Action, it demonstrates an alignment of interests courts have used to approve § 327(e) applications. *See In re Polaroid Corp.*, 424 B.R. 446 (Bankr. D. Minn. 2010); *In re J.S. II, L.L.C.*, 371 B.R. 311 (Bankr. N.D. Ill. 2007); *In re Midway Motor Sales, Inc.*, 355 B.R. 26 (Bankr. N.D. Ohio 2006); *In re RPC Corp.*, 114 B.R. 116 (M.D.N.C. 1990). Indeed, Mr. George would be motivated to maximize the assets recovered for the estate in this regard.

Another alleged adverse interest is Mr. George's motivation to avoid any causes of action the estate may have against him, presumably by acquiring favor from the Trustee due to his

possible success in the Civil Action.  However, this is purely speculative and does not rise to the level of disqualification under § 327(e).  *In re RPC Corp.*, 114 B.R. at 120 ("slight possibility of [corporate mismanagement and preference] claims, however, will not bar the retention" of special counsel).  Notably, the Trustee is not barred from pursuing an action against George should the circumstances warrant it in the future.  He has a fiduciary duty in that regard, and the court has every expectation that he will fulfill his fiduciary duty as necessary.

Other possible conflicts identified by Blackhawk center around avoiding liability on guaranties.  However, any strategies employed in the Civil Action would be with the Trustee's knowledge and approval.  *See id.* (potential for settlement is not fatal to § 327(e) appointment because "the Trustee, an attorney, will control any settlement negotiations").

The Trustee is a competent attorney with many years of experience, including as a trustee in coal cases.  The Trustee is the one making decisions for the bankruptcy estate, not George.  In the role of special counsel, George truly is a hired gun as contemplated in *Polaroid*, retained to handle "the continuance of a pre-petition engagement to a conclusion on its merits under its governing substantive law."  *In re Polaroid*, 424 B.R. at 452.

If he wasn't already, the Trustee is acutely aware of the potential conflicts articulated by Blackhawk through the disclosure process and the lengthy arguments that followed.  In making decisions on how to proceed with the litigation in the Civil Action, including evaluating any type of potential settlement, the court expects the Trustee to act as he would in any other situation, that being with the best interest of the estate in mind.

In deferring to the Trustee's choice of representation, the court relies on more than just his competency and experience.  George, as well as any other professional employed by the estate, has a continued duty to disclose any conflicts or adverse interest that may arise or develop even after being initially approved.  If any new or conflicting information would come to light, the court would examine it to determine if disqualification is appropriate.  Compensation requires a second look where the court may reduce or disallow fees to counsel.  The court is confident that George is aware of this risk.

**D.** ***In re Roper & Twardowsky***

Blackhawk relies heavily on *In re Roper & Twardowsky, LLC*, 566 B.R. 734 (Bankr. D.N.J. 2017) in its arguments regarding the existence of adverse interest on the part of special counsel

and the criteria warranting a § 327(a) evaluation as opposed to § 327(e).  For this reason, the court finds it appropriate to provide an in-depth analysis of the case and why it believes the case to be distinguishable from the facts and circumstances currently present before this court.

*Roper & Twardowsky* is a case about rights to settlement proceeds between the debtor and several law firms.  *Id.* at 738.  On December 4, 2015, the debtor voluntarily filed Chapter 11 Bankruptcy.  *Id.*  This filing was roughly one month after the final state court claims were paid, leaving the only remaining funds designated for attorneys' fees and costs.  *In re Roper & Twardowsky, LLC*, No. 16-5485, 2016 WL 7322787, at *1 (D.N.J. Dec 14, 2016).  Approximately two months later the matter was converted to a Chapter 7 case.  *Id.*

In finding cause to convert under § 1112(b), the court noted its concern in the debtor's failure to disclose granting UCC-1 security interests to proposed special counsel Ms. Roper, her relative Craig Roper, and proposed special counsel Mr. Thyne, just two months before the bankruptcy filing.  *In re Roper & Twardowsky*, 566 B.R. at 739.  Additionally, the court noted that the debtor being "a defendant along with Roper & Thyne and its principals (Ms. Roper and Mr. Thyne) in a separate legal action created numerous potential conflict of interest concerns."  *Id.*  The court found it to be in the best interest of the creditors to appoint a Chapter 7 Trustee based on the potential causes of action the debtor may have against its principals.  *Id.*

The Chapter 7 Trustee filed an application to employ Roper & Thyne, LLC, as special counsel.  *Id.* at 738.  Ms. Roper and Mr. Thyne were equity holders and principals of the debtor.  *Id.*  Ms. Roper was also assigned as trustee to the settlement fund.  *Id.* at 739.  The court denied the application, holding the following:

> [1] proposed employment would violate at least two New Jersey Rules of Professional Conduct, that dealing with conflicts of interest, and that generally prohibiting a lawyer from acting as advocate at trial in which he was likely to be necessary witness; [2] trustee failed to show that purpose for which he sought to employ attorneys, to assist him in objecting to proofs of claim, was "special" purpose; [3] trustee failed to show that his employment, as special counsel to trustee, of attorneys who were principals in debtor/law firm was in "best interest of the estate"; and [4] attorneys were not disinterested and suffered from conflicts of interest that foreclosed their employment pursuant to bankruptcy statute governing employment of estate professionals in general.

*In re Roper & Twardowsky*, 566 B.R. at 734.

The court determined that the proposed employment application was not proper under §
327(e) because it did not meet the "special purpose" and "best interest" requirements. *Id.* at 754.
Based on this determination, the court then applied a § 327(a) analysis to Roper & Thyne. *Id.* The
trustee conceded they could not satisfy the disinterestedness requirement. *Id.* at 755. While this
is the same legal outcome sought by Blackhawk, the analogies between WWMV and Roper &
Thyne miss the mark on multiple fronts.

Blackhawk argues that "[t]he court in *Roper & Twardowsky* found the roles of counsel as
both lawyers and interest holders in their personal capacity created conflicts under the New Jersey
professional conduct rules and and [sic] adverse interests under § 327(e) of the Bankruptcy Code."
Blackhawk's Reply in Supp. Of Obj. 4. However, the *Twardowsky* Court specifically stated it did
not analyze § 327(e) adverse interest because the trustee failed to meet the "special purpose" and
"best interest" prongs. *In re Roper & Twardowsky*, 566 B.R. at 754. The *Twardowsky* Court's
holdings were based on a § 327(a) analysis with a stricter conflict standard and a broader scope of
representation.

In addition to lacking a § 327(e) adverse interest analysis, the facts in *Roper & Twardowsky*
are easily distinguishable from the present case. While George does have multiple interests
relating to the bankruptcy case, they do not come close to the layered web of entanglement in
*Roper & Twardowsky*. The court there noted "Ms. Roper takes on so many roles that at times the
Court has been forced to stop hearings just to find out who Ms. Roper is representing and/or
speaking on behalf of at that particular time." *In re Roper & Twardowsky*, 566 B.R. at 748.[3]

The *Roper & Twardowsky* Court disqualified special counsel under § 327(e) for not
meeting the "special purpose" and "best interest" requirements and under § 327(a) for not being

---

[3] The employment application included retaining special counsel for state court litigation and five separate
Adversary Proceedings, one of which the trustee brought against the debtor and Ms. Roper in her capacity as the
settlement fund trustee. *In re Roper & Twardowsky, LLC*, 566 B.R. 734 (Bankr. D.N.J. 2017). The debtor amended
its schedules removing most of the law firm creditors *after* they provided notice of their claims. *In re Roper &
Twardowsky, LLC*, 569 B.R. 375, 384 (Bankr. D.N.J. 2016). Also included in that amended schedules were new
claims on behalf of Ms. Roper, Craig Roper, Roper & Thyne, LLC, and Mr. Thyne totaling approximately
$5,000,000. *Id.* Not included in the amended schedules and on the last day to file a claim, Ms. Roper filed a
$25,000,000 secured claim on behalf of herself individually and a $1,000,000 secured claim on behalf of Roper &
Thyne. *Id.* On the same day Roper & Thyne filed a secured claim for $1,250,000 signed by Mr. Thyne. *Id.* The
court noted that none of these claims were supported by backup documentation. *Id.*

disinterested.  If the court had analyzed the facts under § 327(e) for adverse interest, the outcome would likely have been the same.  However, these facts are in no way analogous to the present case and provide this court little, if any, guidance on the matter.  Instead, the court looks to the litany of cases referenced herein in formulating its decision.

### III.  Conclusion

George previously represented the Debtor as demonstrated by its representation in the Civil Action since 2016.  George's representation is in the best interest of the estate because George is uniquely situated with intimate knowledge of the facts and circumstances of the Civil Action, and continuing representation provides significant savings to the estate.  George's representation is for the special, limited purpose of litigating the Civil Action.  George's interests do not amount to an interest adverse to the estate within the meaning of § 327(e).

For these reasons, the court will approve the Trustee's application and enter the Trustee's proposed order approving his application to employ George as special counsel.